MARVIN McELROY, C73869
AVENAL SP
PO BOX 8
AVENAL, CA 93204

RECEIVED
JUN 12 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

VRW

(PR)

MARVIN McELROY,
Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, W. GAUSEWITZ, DIR OF CORRECTION; AVENAL STATE PRISON, et al.,
Defendant(s)

CV 08 2936

Case No. ______

ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER AND MEMORADUM LAW AND DECLARATIONS/ EXHIBITS SUBMITTED HEREWITH IN SUPPORT OF

# TABLE OF CONTENTS

ORDER TO SHOW CAUSE. . . . . . . . . . . . . . 17

MEMORANDUM OF POINT AND AUTHORITIES . . . 19

I DEPRIVATION OF PLAINTIFF'S TO PERSONAL SAFETY.

II FAILURE TO PROTECT PLAINTIFF FROM ASSAULT 22

III EXCESSIVE USE OF FORCE . . . . . . . 24

IV VERIFICATION . . . . . . . . . . . . . 26

DECLARATIONS

#1 MARVIN McELROY . . . . . . . . . . . . 27

#2 " " . . . . . . . . . . . . . 29

#3 " " . . . . . . . . . . . . . 32

#1 JOHN UPSHAW . . . . . . . . . . . . . 34

#1 CHARLES WALTON . . . . . . . . . . . . 35

#2 " " . . . . . . . . . . . . . 36

EXHIBITS

Hi HARRIS/ROCHA REPORT

Iii NOTICE OF 'HIT' ON PLAINTIFF

Oii PSYCHE REPORT FROM MCSP

Pi 602 - ENEMY CONCERNS

IV ADMINISTRATIVE REMEDIES . . . . . . . . 25.01

V CONCLUSION . . . . . . . . . . . . . . 25.03

MARVIN M^cELROY, C73869
AVENAL SP
PO BOX 8
AVENAL, CA 93204

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MARVIN M^cELROY,
Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, DIRECTOR OF CORRECTIONS, W.D. GAUSEWITZ, et al., AVENAL STATE PRISON, et al., JAMES D. HARTLEY, WARDEN.
Defendant(s)

ORDER TO SHOW CAUSE FOR A PRELIMINARY JUNCTION AND A TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF LAW AND DECLARATIONS SUBMITTED HEREWITH IN SUPPORT OF

Civil Action No ______

UPON THE COMPLAINT, THE SUPPORTING DECLARATIONS OF PLAINTIFF, AND THE MEMORANDUM OF LAW SUBMITTED HEREWITH, IT IS:

ORDERED THAT DEFENDANTS WILLIAM GAUSEWITZ, DIRECTOR OF CORRECTIONS AND JAMES D. HARTLEY, WARDEN OF AVENAL STATE PRISON SHOW CAUSE IN ROOM ______ OF THE UNITED STATES COURTHOUSE AT, ______ ______ ON THE ______ DAY OF ______, 2008, AT ______ O'CLOCK, WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE PURSUANT TO RULE 65(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE ENJOINING THE

DEFENDANTS, THEIR SUCCESSOR IN OFFICE, AGENTS AND EMPLOYEES AND ALL OTHER PERSONS ACTING IN CONCERT AND PARTICIPATION WITH, FROM/TO:

1. TRANSFER PLAINTIFF AWAY FROM ASP, TO A NONDORMITORY INSTITUTION;

2. CALL TO HEARING/REVIEW PLAINTIFF'S CURRENT CLASSIFICATION SCORE AND ADJUST HIS HOUSING PLACEMENT TO MEET THE LEVEL OF SECURITY REQUIRED TO MAINTAIN HIS HEALTH AND SAFETY.

3. REVIEW ALL PERTINENT DOCUMENTS/FILES NECESSARY TO THE SAFE KEEPING AND WELLBEING OF PLAINTIFF, AND ANY OTHER DESCISIONS AFFECTING HIS WELFARE/HOUSING PLACEMENT

IT IS FURTHER ORDERED THAT EFFECTIVE IMMEDIATELY, AND PENDING THE HEARING AND DETERMINATION OF THIS ORDER TO SHOW CAUSE, THE DEFENDANTS W. GAUSEWITZ AND J.D. HARTLEY AND EACH OF THEIR OFFICERS, AGENTS, EMPLOYEES, AND ALL PERSONS ACTING IN CONCERT OR PARTICIPATION WITH THEM, ARE RESTRAINED FROM:

4. PHYSICALLY ABUSING PLAINTIFF/USEING EXCESSIVE FORCE;

5. ANY FURTHER VERBAL/MENTAL/EMOTIONAL/PSYCHOLOGICAL ABUSE;

6. ARBITRARY, CAPRICIOUS/ANY IRRATIONAL CLASSIFICATION OF PLAINTIFF;

7. HOUSING PLAINTIFF IN GYMS/DORMITORY HOUSING UNITS;

8. DEPRIVING PLAINTIFF WITH PERSONS DEFINED UNDER 15 CCR §3141; AND

9. ANY OTHER ACTION THAT MAY OBSTRUCT PLAINTIFF'S ACCESS TO THE COURTS INCLUDING THE ERRONIOUS SCREEN OUTS OF GRIEVANCES, THAT SUBSEQUENTLY HAS EFFECT/AFFECT OF PREVENTING INMATES FROM EXHAUSTING ADMINISTRATIVE REMEDIES.

IT IS FURTHER ORDERED THAT THE ORDER TO SHOW CAUSE, AND ALL OTHER PAPERS ATTACHED TO THIS APPLICATION BE SERVED ON THE AFORESAID PLAINTIFF BY JUNE 27, 2008.

______________________________

DATED: ______________

UNITED STATES DISTRICT JUDGE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION AND FOR A TEMPORARY RESTRAINING ORDER

I. PRISON OFFICIALS VIOLATED THE 8TH AMENDMENT BY DEPRIVING PLAINTIFF OF HIS RIGHT TO PERSONAL SAFETY AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

1. IN EVALUATING A CLAIM OF CRUEL AND USUAL PUNISHMENT, A COURT FIRST ASK WHETHER THE DEPRIVATION WAS SUFFICIENTLY SERIOUS. WILSON V. SEITER (1991) 501 U.S. 294 [111 S.CT. 2321; 115 L.ED. 2D 271]. THIS OBJECTIVE COMPONENT REQUIRES A DEPRIVATION OF "~~LIFE'S~~ MINIMAL CIVILIZED MEASURES OF LIFE'S NECESSITIES." HUDSON V. MCMILLAN (1992) 503 US. 1, 9 [112 S.CT. 995; 117 L.ED. 2D 156] (CITING RHODES V. CHAPMAN (1981) 452 U.S. 337, 347 [101 S.CT. 2392; 69 L.ED. 2D 59])

2. PERSONAL SAFETY IS ONE OF LIFE'S NECESSITIES. HOPTOWIT V. RAY (9TH CIR. 1982) 682 F.2D 1237, 1246. WHETHER A CONDITION OR INJURY VIOLATES CONTEMPORARY STANDARDS OF DECENCY WILL VARY FROM SITUATION TO SITUATION. A TRANSFER MIGHT SUBJECT A PRISONER TO CRUEL AND UNUSUAL PUNISMENT IF THE PRISONER WOULD BE PLACED WITH KNOWN ENMIES [O]R OTHERS WHO WOULD CAUSE SERIOUS HARM. SEE FARMER V. BRENNAN (1994) 511 U.S. 825 [114 S.CT. 1970; 128 L.ED. 2D. 811] (PRISON OFFICIALS HAVE DUTY TO PROTECT PRISONERS FROM VIOLENCE AT THE HANDS OF OTHER PRISONERS ; A CONSTITUTIONAL VIOLATION OCCURS WHEN THE DANGER OF HARM IS "SUFFICIENTLY SERIOUS" AND THE PRISON OFFICIALS ACT WITH "DELIBERATE INDIFFERENCE" TO INMATE'S HEALTH OR SAFETY).

3. THE PLAINTIFF HAS BEEN PLACED WITH THOSE WHO CAUSED HIM SERIOUS HARM (SEE EXHIBIT 'H') IN DOING SO PRISON OFFICIALS HAVE NEGLICTED TO PERFORM THEIR DUTY AND PROTECT THE PLAINTIFF AND ARE DELIBERATELY INDIFFERENT TO THE FUTURE RISK OF FUTURE HARM THE PLAINTIFF IS FACING. WHILE, THE PLAINTIFF HAS RAISED HIS CONCERNS, PRISON OFFICIALS HAVE FAILED TO PROTECT HIM, EVEN THOUGH THEY HAVE HAD, AND CONTINUE TO HAVE THE ABILITY TO DO SO. IN THE PLAINTIFF'S RECENTLY FILED ADMINISTRATIVE APPEAL RAISING "LIFE AND SAFETY CONCERNS" (SEE EXHIBIT 'P'

ASP-M-08-01308, denied, SGT PHELAN STATED at [APPEAL RESPONSE] "... IF YOU HAD BEEN ABLE TO IDENTIFY THESE INMATES AT THE TIME OF THIS ALLEGED INCIDENT APPROPRIATE STEPS WOULD BE IN PLACE SO AS NOT TO JEPORDIZE YOUR SAFETY...").

IT'S NOT THE PLAINTIFFS JOB TO PROTECT HIMSELF NOR ANY ONE ELSE/INMATES. PLAINTIFF, 59 WEARS GLASSES, ALLEGES THAT HE TRIED TO IDENTIFY HIS ATTACKERS, WHO ATTACKED HIM WITHOUT WARNING, BUT COULD NOT; THOUGH HE DID IDENTIFY RAYMOND MARTINEZ (see McELROY DECLARATION #2 at [PARAGRAPH 2]) WHO HAD PREVIOUSLY TRIED TO EXSTORT COLOR PENCILS FROM PLAINTIFF (MARTINEZ KNOWS ABOUT PLAINTIFF'S 'LETTER OF COMMENDATION' FOR HELPING A "COP"); THEY LIVED IN THE SAME HOUSING UNIT. PLAINTIFF ALSO ALLEGES HE WAS DENIED A CHANCE TO IDENTIFY (BY PHOTO LINEUP) THE WITNESSES, WHO WERE TAKEN ~~CUSTODY~~ INTO CUSTODY AT THE TIME OF THE INCIDENT, NOR WAS HE PERMITTED TO CALL FORTH ALL THOSE INMATES (see EXHIBIT 'P' at [PG 15] RVR# F4-08-01-044) WHO WERE IN THE AREA OF THE INCIDENT, TO HELP IDENTIFY HIS ATTACKERS. FURTHERMORE ALL OF PLAINTIFF'S ENEMY CONCERNS, HAVE BEEN/ARE BECAUSE PLAINTIFF IN 1993 "RESCUED" A CORRECTIONAL OFFICER WHO WAS BEING VICIOUSLY ATTACKED BY ANOTHER INMATE, INMATES WHO PROBLY WOULD TAKE HIS LIFE IF THEY FOUND OUT, THAT PLAINTIFF ALSO "SNITCHED" (/RAT); CONSIDERING THE DEFENDANTS/OTHER PRISON OFFICIALS FAILURE TO RESPOND REASONABLE TO THE PLAINTIFF'S SAFETY AND ENEMY CONCERNS.

4. A CONDITION WHICH HAS NOT CAUSED ANY PRESENT INJURY MAY STILL VIOLATE THE 8TH AMENDMENT IF IT THERE IS "IMMINENT DANGER," AND THE CONDITION IS VERY LIKELY TO CAUSE "SERIOUS ILLNESS AND NEEDLESS SUFFERING." HELLING V. McKINNEY (1993) 509 U.S. 25 [113 S.CT. 2475; 125 L.ED. 2D 28] (INMATE EXPOSURE TO CIGERATE SMOKING); WALLIS V. BALDWIN (9TH CIR. 1995) 70 F. 3D 1074 (REQUIRING INMATES TO CLEAN ATTIC WHEN JAILERS KNEW OR SUSPECTED PRESENCE OF ABESTOS COULD VIOLATE 8TH AMENDMENT).

THE PLAINTIFF HAS DEMONSTRATED HE IS IN "IMMINENT DANGER" AND THAT HE HAS NEEDLESSLY SUFFERED AND HE CONTINUES TO SUFFER PAIN CAUSED BY THE ATTACKS OF INMATES AND FROM THE ABUSE/USE OF EXCESSIVE FORCE BY THE DEFENDANTS AND FROM THE

DEFENDANTS NEGLECTING TO PROPERLY TRAIN THEIR STAFF. PLAINTIFF IS ALSO SUFFERING SERIOUS ILLNESS, POST TRAUMATIC STRESS DISORDER, AS A RESULT OF THE DEFENDANTS' AND PRISON OFFICIALS' ACTIONS/FAILURE TO ACT/REASONABLY RESPOND TO PLAINTIFF'S SAFETY CONCERNS AND NEEDS.

5. IN DETERMING WHETHER A PARTICULAR CONDITION IS CONTRARY TO CIVILIZED STANDARDS OF DECENCY, COURTS CAN CONSIDER THE OPINIONS OF EXPERTS, BUT SUCH OPINIONS WILL NOT ORDINARILY ESTABLISH CONSTITUTIONAL STANDARDS. ACCORDING TO THE NINTH CIRCUIT COURTS OF APPEALS, WHAT THE GENERAL PUBLIC WOULD THINK ABOUT A PARTICULAR CONDITION IS MORE IMPORTANT THAN EXPERT OPINION. HOPTOWIT V. RAY (9TH CIR. 1982) 682 F.2D 1237; see also KEENAN V. HALL (9TH CIR. 1996) 83 F.3D 1083 (DISCUSSING NUMEROUS CONDITIONS ISSUES THAT CAN RAISE EIGHTH AMENDMENT CONCERNS).

6. THE SECOND COMPONENT REQUIRES A CONSIDERATION OF PRISON OFFICIALS STATE OF MIND IN RELATION TO THE SITUATION BEING ADDRESSED. IS PRISON OFFICIALS CONDUCT WANTON? STANDARD IS WHETHER AN OFFICIAL ACTED WANTONLY DEPENDS ON THE NATURE OF THE PRISONER'S CLAIM. "WANTON" IN GENERAL PRISON CONDITIONS CASES MEANS ACTING WITH "DELIBERATE INDIFFERENCE." A PRISON OFFICIAL ACTS WITH DELIBERATE INDIFFERENCE IF HE OR SHE KNOWS OF AND DISREGARDS AN INHUMANE CONDITION OR ACTION THAT CONSTITUTES AN EXCESSIVE RISK TO INMATE HEALTH AND SAFETY.

THE FINAL POLICY MAKER(S) HAS READ/REVIEWED THE PLAINTIFF'S CENTRAL FILE, AND IS AWARE OF THE EXCESSIVE RISK TO PLAINTIFF. AND THE NAMED SUPERVISORY OFFICIALS/OTHER PRISON OFFICIALS AND PERSONNEL OBSERVED THE HARMFUL CONDUCT/EXCESSIVE USE OF FORCE, ATTACKS FROM OTHER INMATES AND FAILED TO PROTECT PLAINTIFF, AND ARE AWARE OF THE PLAINTIFF'S FRAGILE PSYCHOLOGICAL WELLBEING/HEALTH WHICH IS DIRECTLY AFFECTED BY THE CONDITIONS OF HIS CONFINEMENT.

7. IN THIS REGARD, A PRISON OFFICIAL "WOULD NOT ESCAPE LIABILITY IF THE EVIDENCE SHOWED THAT HE MERELY REFUSED TO VERIFY UNDERLYING FACTS THAT HE STRONGLY SUSPECTED TO BE TRUE, DECLINED TO CONFIRM INFERENCES OF RISK THAT HE STRONGLY SUSPECTED TO EXIST." FARMER V. BRENNAN (1994) 511 US. 825, 842-843 [114 S.CT. 1970; 128 L.ED. 2D 811]; see also Id. at FN.8.

II PRISON OFFICIALS/OFFICERS FAILURE TO REASONABLY RESPOND TO, AND PROTECT PLAINTIFF FROM ASSAULT BY OTHER INMATES, VIOLATED PLAINTIFF'S 8TH AMENDMENT RIGHT, UNDER THE FEDERAL CONSTITUTION, TO BE **FREE** FROM CRUEL AND UNUSUAL PUNISHMENT

8. PRISONERS HAVE A RIGHT UNDER THE 8TH AMENDMENT OF THE FEDERAL CONSTITUTION TO BE REASONABLY PROTECTED FROM CONSTANT THREAT OF VIOLENCE AND SEXUAL ASSAULT BY FELLOW PRISONERS, AND HE/SHE NEED NOT WAITE UNTIL AN ASSAULT OCCURS TO OBTAIN RELIEF. FARMER V. BRENNAN (1994) 511 U.S. 825 [114 S.CT 1970; 128 L.ED. 2D 811]; NOLL V. CARLSON (9TH CIR. 1987) 809 F. 2D 1446; see also BERG V. KINCHELO (9TH CIR. 1986) 794 F. 2D 457, 459 (CLAIM BASED ON THREAT OF HARM SUFFICIENT).

THE PLAINTIFF HAS A WELL DOCUMENTED HISTORY OF ENEMY CONCERNS, DATEING BACK TO 1993 (see EXHIBITS 'Iii' AND 'Oii'). THE PLAINTIFF'S MOST RECENT ATTACK, SUFFERED, ALSO, DEMONSTRATES THAT, THIS SELFLESS ACT, OF SAVING LT. GIOTTONINI JULY 6, 1993, IS STILL CONSTRUED BY THE GENERAL PRISON POPULATION, EVEN ON 'SNY' YARDS, TO BE AN [U]NFORGIVABLE GESTURE/ ACT. THE ATTACK[S], HE HAS THUS FAR SUFFERED, BECAUSE OF SAID ACT, HAVE LEFT HIM WITH [T]WO [I]RREPARABLE INJURIES. HE WILL NEVER BE ABLE TO RUN AGAIN AND THE LOSS OF MOBILITY/ABILITY TO USE HIS RIGHT HAND/ WRIST/ARM, GREATLY REDUCES HIS QUALITY OF LIFE AND, IMPAIRS HIS ABILITY TO PERFORM LIFE'S MOST BASIC FUNCTIONS; LIKE TYEING HIS SHOES OR SIGNING HIS NAME.

HE HAS SUFFERED FAR MORE THAN A SIMPLE THREAT, HOWEVER THE NEXT INCIDENT WILL PROBLY TAKE HIS LIFE.

9. WHILE MERE NEGLIGENCE ON THE PART OF PRISON OFFICIALS IS INSUFFICIENT TO SUPPORT A CONSTITUTIONAL CLAIM; THEIR ACTIONS IN FAILING TO PROTECT A PRISONER MUST AMOUNT TO DELIBERATE INDIFFERENCE TO THE [P]RISONERS NEED. DAVID V. CANNON (1986) 474 US. 344 [106 S. CT. 688,

88 L.ED 2D 677]; FARMER V. BRENNAN (1994) 511 U.S. 825 [114 S.CT. 1970; 128 L.ED. 2D 811]; BERG V. KINCHELOE (9TH CIR. 1998) 794 F. 2D 457; HARRIS V. ROBERTS (N.D. CAL. 1989) 719 F. SUPP. 879; LEER V. MURPHY (9TH CIR. 1988) 844 F. 2D 628, 633; REDMAN V. COUNTY OF SAN DIEGO (9TH CIR. 1991) 942 F. 2D 1435.

PRIOR TO THE ATTACK, PLAINTIFF SUFFERED IN 2002, HE HAD GONE TO PRISON OFFICIALS AND INFORMED THEM THAT HIS CELLIE DID NOT WANT HIM AS A CELLY; BECAUSE OF THEIR FAILURE TO RESPOND REASONABLY, TO HIS GRIVANCE/COMPLAINT, HIS NOW UNABLE TO RUN; JUST LIKE (TODAY) THE DEFENDANTS JUST STOOD THERE WITH CALLOUS INDIFFERENCE WATCHING A 59 YEAR OLD, ELDERLY MAN, BEING BRUTILY ATTACKED AND BEATEN BY TWO INMATES WHO BROKE HIS WRIST AND GOT AWAY.

IT'S THIS VERY SYSTEMIC PATTERN OF FAILING TO REASONABLY RESPOND TO VOICED CONCERNS/VISIBLY APPERANT SITUATIONS/CIRCUMSTANCES/INCIDENTS THAT HAS CHANGED THE PLAINTIFFS LIFE; AS HE ONCE KNEW IT.

10. PRISON OFFICIAL'S KNOWLEDGE OF SUBSTANTIAL RISK TO INMATES SAFETY, FOR PURPOSE OF INMATES CLAIM THAT OFFICIAL VIOLATED 8TH AMENDMENT BY FAILING TO PROTECT INMATE, IS QUESTION OF FACT AND CAN BE PROVEN BY CIRCUMSTANTIAL EVIDENCE; see HAMILTON V. LEAVY, 117 F. 3D 742 (1997). "WHILE NOT EVERY INJURY SUFFERED BY ONE PRISONER AT THE HANDS OF ANOTHER TRANSLATES INTO 8TH AMENDMENT LIABILIT FOR PRISON OFFICIALS RESPONSIBLE FOR VICTIM'S SAFETY BEING VIOLENTLY ASSAULTED IN PRISON IS SIMPLY NOT PART OF PENALTY THAT CRIMINAL OFFENDERS PAY FOR THEIR OFFENSES SOCIETY AND PRISON OFFICIALS DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF SERIOUS HARM TO INMATE THUS VIOLATES 8TH AMENDMENT PROHIBITION, ON CRUEL AND UNUSUAL PUNISHMENT;" FARMER V. BRENNAN, 511 U.S. 825, 833, 114 S.CT. 1970, 1976, 128 L.ED. 2D 811 (1994) (QUOTING CORTES-QUINONES V. JIMENEZ-NETTLESIH, 842 F. 2D 556, 558 (1ST CIR. 1988)); (see also RHODES V. CHAPMANN, 452 U.S. 337, 345, 101 S.CT. 2392, 2398, 69 L.ED. 2D 59 (1981)).

III DEFENDANTS USE OF EXCESSIVE FORCE VIOLATED PLAINTIFF'S 8TH AMENDENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

11. PRISONERS HAVE AN ABSOLUTE RIGHT, GAURANTEED BY THE 8TH AMEND. TO THE U.S. CONSTITUTION, TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT. see U.S. CONSTITUTION, 8TH AMEND. ("EXCESSIVE... CRUEL AND UNUSUAL PUNISHMENT INFLICTED."); see also CALIFORNIA CONSTITUTION, ARTICLE 1, § 17. UNLIKE OTHER FEDERAL CONSTITUTIONAL RIGHTS, WHICH MUST BE BALANCED AGAINST SECURITY AND OTHER CONCERNS WHEN APPLIED TO PRISONERS, VIOLATIONS OF THE 8TH AMEND. CAN NEVER BE JUSTIFIED. "THE EIGHTH AMENDMENT IS NOT A 'MAYBE' OR 'SOMETIMES' PROPOSITION. TOUSSAINT V. McCARTHY (9TH CIR. 1986) 801 F. 2D 1080, CERT DENIED, 107 S.CT. 2462 (1987)

A GAURDS USE OF EXCESSIVE FORCE AGAINST A PRISONER CAN VIOLATE THE 8TH AMEND.. IN EXCESSIVE FORCE CASES, THE COURT MUST DETERMINE WHETHER THE FORCE WAS APPLIED "IN GOOD FAITH TO MAINTAIN OR RESTORE DISCIPLINE, OR MALICIOUSLY OR SADISTICALLY TO CAUSE HARM." HUDSON V. McMILLAN, 503 U.S. 1, 6, 112 S. CT. 995, 998, 117 L.ED. 2D 156 (1992); WHITLEY V. ALBUR (1986) 475 U.S. 312 [106 S.CT. 1078; 89 L.ED 2D 251]; GAUT V. SONN (9TH CIR. 1987) 810 F. 2D 923; ROBINSON V. MEECHAM (9TH CIR. 1991) 939 F. 2D 699, 701-702. "EXCESSIVE FORCE" IS ANY PHYSICAL CONTACT BY A GAURD THAT IS MEANT TO CAUSE HARM, RATHER THAN TO KEEP ORDER.

12. TO DECIDE WHAT FORCE IS EXCESSIVE, JUDGES CONSIDER:

a. THE NEED FOR FORCE? NONE;

13. THE PLAINTIFF IS A 59 YEAR OLD, 150 lb. ELDERLY MAN FEARING FOR HIS LIFE, BECAUSE HE WAS UNABLE TO DEFEND HIMSELF; BECAUSE HIS WRIST WAS BROKEN (WITH PINS STICKING OUT) BY TWO ATTACKERS, PRISON OFFICIALS FAILED TO CATCH AND ~~BUT~~ THEY CAN BE ON EITHER YARD. FURTHERMORE THE PLAINTIFF [O]NLY BEGGED AND PLEADED NOT TO GO TO THE YARD BECAUSE OF ENEMY CONCERNS (see UPSHAW DECLARATION). PLAINTIFF HAS ALSO

ONLY RECIEVED THREE RULE VIOLATIONS, A LETTER OF COMMENDATION AND POSITIVE PSYCHE REPORTS IN THE LAST [25] YEARS! SEE ATTACHED DOCS/EXH..

b. WHETHER THE AMOUNT OF FORCE USED WAS REASONABLE GIVEN THE NEED?

14. THE PLAINTIFF HAS A WELL DOCUMENTED HISTORY OF ANXIETY/STRESS RELATED DISORDERS. HOWEVER THAT IS NO EXCUSE FOR DEFENDANT T. DEEGAN TO GRAB AND [JERK] THE PLAINTIFF'S BROKEN ARM/WRIST THEN SPRAY HIM WITH PEPPER PEPPER SPRAY. THE PLAINTIFF WAS FROZEN IN TERROR "HUGGING" THE BENCH. DEFENDANTS COULD HAVE CALLED A PSYCHE/DR. TO REASON WITH HIM.

c. HOW SERIOUS THE NEED FOR FORCE APPEARED TO THE GAURDS?

15. DEFENDANT BOSTON CALLED THE ASSOCIATE WARDEN, THE DEFENDANT ORDERED DEFENDANT SGT. SIMON TO PREPARE FOR A CELL EXTRACTION, AND TO INFORM THE PLAINTIFF (CELL EXTRACTIONS ARE VIDEAO TAPED [N] ORMALLY). IF DEFENDANT T. DEEGAN BELIEVED THE PLAINTIFF TO BE A SERIOUS THREAT; HE MORE THAN LIKELY WOULD HAVE WAITED FOR THE EXTRACTION TEAM, AS APOSED TO POKING -AND- PRODING THE SCARED, CRIPPLED CAGED ANIMAL.

d. WHETHER THE GAURDS MADE EFFORTS TO USE AS LITTLE FORCE AS NECESSARY?

16. IS THERE ANY JUSTIFICATION FOR PULLING ON A [M]AN'S BROKEN ARM AND PEPPER SPRAYING HIM; AT POINT BLANK RANGE TWICE?

e. HOW BADLY YOU WERE HURT?

17. THE DEFENDANTS; WERE, AWARE OF HIS BROKEN WRIST WILLFULY AND WANTONLY WITH MALICIOUS SADISTIC INTENT, JERKED HIS BROKEN WRIST, PEPPER SPRAYED HIM, THEN DRAGGED HIM ACROSS THE PLAZA IN HANDCUFFS BY HIS BROKEN WRIST, AS HE SCREAMED IN PAIN AND SUFFERED. THEN TACKLED HIM AND CAUSED THE PINS HOLDING HIS WRIST TOGETHER TO BE SHOVED ALL THE WAY INTO THE BONE. PLAINTIFF ALSO NOW SUFFERS POST TRAUMATIC STRESS DISORDER AND LOSS OF MOBILITY IN HIS WRIST.

IV ADMINSTRATIVE REMEDIES

18. PLAINTIFF HAS PURSUED EXHAUSTION OF THE MATTERS GIVING RISE TO THIS ACTION NOW BEFORE THIS COURT; HOWEVER, PRISON OFFICIALS HAVE FAILED TO PROCESS HIS APPEALS.

THEREBY RENDERING THE ADMINISTRATIVE REMEDY UNAVALIABLE/INADEQUATE AND THUS NOT AVALIABLE. WHITE V. CALIFORNIA (1987) 195 CAL. APP. 3D 452, 464 [240 CAL. RPTR. 732]; GLENDALE CITY EMPLOYEES ASSN. INC. V. CITY OF GLENDALE (1975) 15 CAL. 3D 328, 342-343 [124 CAL. RPTR. 535]; AND AS SUCH, THE EXHAUSTION REQUIREMENT ARGUABLY WOULD NOT APPLY.

19. AMONG THE MANY EXCEPTIONS TO THIS RULE ARE, AS IN THIS CASE, IN THAT PLAINTIFF HAS ALREADY SUFFERED, AND REQUIRING EXHAUSTION, IS LIKELY TO CAUSE PLAINTIFF TO SUFFER, AN UNREASONABLE RISK, OF FURTHER IRREPARABLE HARM. IN RE SERNA (1978) CAL. APP. 3D 1010, 1015-1020 [143 CAL. RPTR. 350 (STEPHENS, J. DISSENTING); OR IF A PENDING TRANSFER (/BACK TO THE YARD AT ASP) WOULD PRESENT UNREASONABLE RISK TO THE PLAINTIFF'S SAFETY. FARMER V. BRENNAN (1994) 511 U.S. 825 [114 S. CT. 1970; 128 L.ED. 2D] (PRISON OFFICIALS HAVE DUTY TO PROTECT PRISONERS FROM VIOLENCE AT THE HANDS OF OTHER PRISONERS...) / THE [H]ANDS OF THEIR CUSTODY OFFICERS; A DUTY, IN THIS CASE, PRISON [O]FFICIALS/[A]DMINISTRATORS HAVE NEGLICTED TO FULLFILL.

20. THIS TYPE OF ENVIROMENT, HARDLY LENDS ITSELF TO AN INMATES GRIEVANCE WITHOUT, THE MORE THAN LIKELY CHANCE, OF THE WRITER SUFFERING FURTHER RETALIATION AND REPRISALS.

IN THE HEABEUS ACTION BROUGHT BEFORE THE CALIFORNIA SUPREME COURT, IN WHICH THE PETITIONER, ROBERT CHARLES JORDAN SOUGHT VINDICATION OF RIGHTS REGARDING CONFIDENTIAL/PRIVILAGE CORRESPONCES, THE JUSTICE, C. J. WRIGHT STATED, "... IT WOULD BE NAIVE TO ASSUME, FOR INSTANCE, THAT A PRISONER WHO ACCUSES INSTITUTIONAL OFFICIALS OF IMPROPRIATIES WILL FREELY COMMIT HIS CHARGE TO PAPER KNOWING THAT THE SAME OFFICIALS WHO DAILY SUPERVISE HIS EVERY

ACTIVITY WILL READ THAT LETTER..." IN re JORDAN (1974) 12 CAL. 3D 575.

THE PLAINTIFF, WHO IN THIS CASE, IS SEEKING VINDICATION FOR IRREPARABLE INJURY AND HARMS ALREADY SUFFERED AT THE [H]ANDS OF DEFENDANT(S), SURELY CAN'T BE EXPECTED TO FILE AN APPEAL, THROUGH TO EXHAUSTION, WHEN SUCH AN APPEAL WOULD PASS THROUGH THE VERY [H]ANDS OF THOSE WHO HARMED THE PLAINTIFF TO BEGIN WITH.

IN APPLYING THE JUSTICE'S C J WRIGHTS OBSERVATION, ONE COULD ONLY CONCUR THAT "...IT WOULD BE NAIVE TO ASSUME..." SO. FURTHERMORE MR. JORDAN ENJOYED SECURITY OF AN OUTSIDE ADVOCATE; WHICH IS A COMFORT THE PLAINTIFF, MR McELROY, CURRENTLY IS NOT AFFORDED.

21. FINALLY, WHILE FEDERAL STATUTE PROVIDES THAT A PRISONER MUST EXHAUST "AVALIABLE" REMEDIES, SOME COURTS-INCLUDING THE NINTH CIRCUIT COURTS OF APPEALS-HAVE HELD THAT PRISONERS DO NOT NEED TO EXHAUST ADMINISTRATIVE REMEDIES IN FEDERAL CIVIL RIGHTS SUITS SEEKING ONLY MONEY DAMAGES BECAUSE MONEY DAMAGES ARE NORMALLY NOT AVALIABLE THROUGH CDC ADMIN. APPEALS PROCESS. RUMBLES V. HILL (9TH CIR 1999) 182 F. 3D 1064; see also GARRET V. HAWK (10TH CIR. 1997) 127 F. 3D 1263, 1266; WHITLEY V. HUNT (5TH CIR 1998) 158 F. 3D 882, 886-887 (EXHAUSTION IS NOT REQUIRED IF ADMINISTRATIVE REMEDIES IS NOT CAPABLE OF PROVIDING REDRESS)

LAST, THE NINTH CIRCUIT COURTS OF APPEALS HAS RULED THAT EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT A [P]LEADING REQUIREMENT IN FED CIV. RIGHTS CASES. WYATT V. TERHUNE ([illegible] CIR 2003) 315 F. 3D 1108, 1119; ANCLOSING AN INMATE IS NOT REQUIRED TO SPECIALLY PLEAD OR DEMONSTRATED EXHAUSTION IN HIS CIVIL RIGHTS COMPLAINT; CIVIL PROCEDURE RULE GOVERNING PLEADING REQUIRES "A SHORT AND PLAIN STATEMENT OF THE CLAIM," AND §1983, UNDER WHICH COVERED BY PLRA TYPICALLY ARE BROUGHT, CONTAINS [N]O EXHAUSTION REQUIREMENT AT ALL; ABROGATING KNUCKLES EL V. TOOMBS, 215 F. 3D 640, STEELE V. FEDERAL BUREAU OF PRISONS, 355 F. 3D 1204, BROWN V. TOOMBS, 139 F. 3D 1102, RIVERA V. ALLIN, 144 F. 3D 719. 42 USCA § 1983; see

also JONES v. BOCK (2007) 127 S.CT. 910, 166 L.ED. 2D 798; PRISON LITIGATION REFORM ACT OF 1995, §101(a), 42 USCA § 1997e(a); F.R.Civ.P. RULE 8(a,c), 28 USCA.

## V CONCLUSION

22. THE DEFENDANT(S) ACTIONS / REFUSAL TO ACT / FAILURE TO ACT, HAVE EITHER DIRECTLY / INDIRECTLY CAUSED THE PLAINTIFF, MARVIN MCELROY, TO NEEDLESSLY SUFFER IRREPARABLE INJURY, AND HE CONTINUES TO SUFFER; BECAUSE OF THE DEFENDANT(S) NEGLIGENCE / CALLOUS DELIBERATE INDIFFERENCE TO THIS UNREASONABLE RISK OF, FUTURE RISK OF SERIOUS HARM, IS IN VIOLATION OF THE 8TH AND 14TH AMENDMENTS.

CDCR OFFICIALS, ADMINISTRATORS AND PERSONNEL POSSES IMMENSE CONTROL OVER THE LIVES OF INMATES. IT IS CURRENTLY OBVIOUS THAT AN ADDITIONAL INSTANCE(S) WHERE PERSONNEL ARE ABLE TO TANGENTIALLY HELP AN INMATE IS NOT LIKELY TO LEAD TO AN INCREASE OF CORRUPTION, COERCION NOR THREATEN SECURITY.

THE PUBLIC INTEREST IS NOT SERVED BY THE ONGOING VIOLATIONS OF PRISONER(S) CONSTITUTIONAL RIGHTS. LEAGUE V. BOARD OF TRUSTEES, 502 F. SUPP. 789, 804 (N.D. ILL 1980) (FINDING THAT "THE ULTIMATE PUBLIC INTEREST LIES IN THE PROTECTION OF THE CONSTITUTIONAL RIGHTS WHICH PLAINTIFF(S) ASSERT").

FOR THIS REASON, PLAINTIFFS MOTION FOR AN ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER SHOULD BE GRANTED.

DATED: MAY 29, 2008

Marvin McElroy

MARVIN MCELROY, C73869

VI VERIFICATION

I, MARVIN MᶜELROY, STATE:

I AM THE PLAINTIFF IN THE ABOVE STATED MATTERS. I HAVE READ THE FOREGOING COMPLAINT, ORDER TO SHOW CAUSE AND MEMORANDUM OF LAW AND THE FACTS STATED THEREIN ARE TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS THAT ARE THEREIN STATED ON MY INFORMATION AND BELIEF, AND AS TO THOSE MATTERS I BELIEVE THEM TO BE TRUE.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT AVENAL AT KINGS COUNTY OF CALIFORNIA ON MAY 29, 2008.

RESPECTFULLY SUBMITTED

Marvin McElroy

MARVIN MᶜELROY

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MARVIN MCELROY, Plaintiff,

V.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS JAMES D. HARTLEY, WARDEN AVENAL STATE PRISON, et al.,

DECLARATION IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER BY MARVIN McELROY

Civil Action No.________

DECLARATION UNDER PENALTY OF PERJURY BY MARVIN McELROY

I, MARVIN McELROY, BEING COMPETENT TO MAKE THIS DECLARATION AND HAVING PERSONAL KNOWLEDGE OF THE MATTERS STATED HEREIN, DECLARES PURSUANT TO 28 USC §1746:

1. I, PLAINTIFF, MARVIN McELROY, SUFFERED AND I CONTINUE TO SUFFER IRREPARABLE PHYSICAL INJURY, AND I CONTINUE TO SUFFER, SEVERE EMOTIONAL AND PSYCHOLOGICAL DISTRESS.

   a. JULY 6, 1993 AT DVISP MARVIN McELROY RESCUED LT. GIOTTONINI WHO WAS BEING ASSAULTED BY ANOTHER INMATE (see EXHIBIT 'I'). PRISON OFFICIALS LATER TRANSFERED MR McELROY TO MCSP, AFTER LEARNING THE BLACKS AND WHITE WERE OCHESTRATEING A 'HIT' ON HIM.

   b. MR McELROY, A LIFER, WAS HOUSED IN A LIFER HOUSING UNIT WERE THE INCIDENT TOOK PLACE. MARVIN BELIEVES THESE LIFERS CALLED THE HIT.

   c. IN 2002 AT MCSP HE SUFFERED A BROKEN KNEE, AFTER HIS CELLY HAD LEARNED THAT HE HELPED A 'COP' (see EXHIBIT 'Oi') HE CAN NEVER RUN AGAIN.

   d. JANUARY 26, 2008 AT ASP'S-HU 420, HIS WRIST WAS BROKEN BY TWO INMATES WHO LEARNED HE HELPED A 'COP'. THEY CALLED MARVIN A "COP" BEFORE

THEY ATTACKED HIM. HE CAN NOLONGER BEND HIS WRIST BACK; THEREBY EVEN FURTHER LIMITING THE EXCERCISE HE CAN DO (see EXHIBIT 'N').

e. FURTHERMORE HIS ATTACKERS ARE STILL AT LARGE AT ASP 3/4 YARDS.

2. PLAINTIFF HAS TRIED TO NOTIFY DEFENDANT(S) THAT HE IS APPLYING FOR A TEMPORARY RESTRAING ORDER/PRELIMINARY INJUNCTION; BUT ASP PERSONNEL HAVE DENIED HIM AND OTHER INMATES THEIR RIGHT TO CONFIDENTIALLY CORRESPOND WITH PRISON OFFICIALS AS DEFINED BY AND AFFORDED INMATES UNDER THEIR OWN 15 CCR § 3141.

a. MAY 19 PLAINTIFF TRIED TO SERVE NOTICE ON THE DIRECTOR OF CORRECTIONS BUT IT WAS RETURNED WITH PART OF THE ADDRESS [B]LACKED OUT (see EXHIBIT 'Qi').

b. HE HAS ALSO TRIED TO SERVE NOTICE ON ASP'S WARDEN HARTLEY, HARTLEY HAS NOT REPLIED/RESPONDED.

c. PLAINTIFF UPON INFORMATION AND BELIEVES, AND THEREON ALLEGES, THAT THE DEFENDANT(S) EMPLOYEES AND COWORKERS, ONGOING, ILLEGAL PRACTICES ARE PURPOSELY DONE TO ASP'S INMATES TO DISCOURAGE INMATES FROM EXCERCISING THEIR 1ST AMENDMENT CONSTITUTIONAL RIGHT (see WALTON DECLARATION #2)

3. THERE IS NO ~~SAID~~ ADEQUATE REMEDY AT LAW TO PROTECT MR McELROY FROM SAID RETALIATION, AND WITHOUT THE EQUATABLE RELIEF SOUGHT HE IS SUSCEPTIBLE TO EVEN FURTHER GREAT IRREPARABLE INJURY. MONEY DAMAGES WILL NOT FIX HIS INJURIES.

4. FURTHERMORE PLAINTIFF IS LIKELY TO SUCCEED AT TRIAL; AND A PRELIMINARY INJUNCTION/RESTRAINING ORDER WILL SERVE THE PUBLIC INTEREST.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AT AVENAL AT KINGS COUNTY OF CALIFORNIA ON MAY 29, 2008

Marvin McElroy

MARVIN McELROY

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MARVIN McELROY,
Plaintiff,

v.

AVENAL STATE PRISON et al.,
JAMES D. HARTLEY, WARDEN,
Defendant(s).

DECLARATION IN SUPPORT OF REQUEST FOR PRELIMINARY INJUNCTION BY MARVIN McELROY, CDC# C73869

Civil Action No.______

DECLARATION UNDER PENALTY OF PERJURY OF MARVIN McELROY

I, MARVIN McELROY, BEING COMPETENT TO MAKE THIS DECLARATION AND HAVEING PERSONAL KNOWLEDGE OF THE MATTERS STATED HEREIN DECLARES PURSUANT TO 28 USC §1746:

1. NOV. 21, 2008, I WAS TRANSFERED TO ASP FROM MCSP. WHEN I ARRIVED AT ASP'S 'R-N-R', MYSELF AND THE OTHER INMATES WERE GIVEN OUR PROPERTY AND NEW STATE CLOTHES. NEXT SGT DOE AND TWO OTHER OFFICERS, ONE WAS C/O LOPEZ (MS.), TOOK US TO A CLASSROOM AND GAVE US A SPEECH! ON HOW TO PROGRAM AT ASP. MS. LOPEZ SAID, THAT THERE IS, ONLY TWO SNY (3 AND 4) YARDS; AND IF YOU OWE SOMEONE/YOU ARE IN DEBT(?) 'PAY-UP'! BECAUSE! THE WORD WOULD GET BACK, TO THE OTHER YARD, ABOUT YOU! AFTER THAT SPEECH, ON RULES! WE WERE TAKEN TO OUR NEW HOUSING UNIT. FOR ME IT WAS 42D.

2. AFTER A FEW DAYS IN 42D, I SAW RAYMOND MARTINEZ, AN INMATE FROM MCSP. WE BOTH WAS ON THE SAME YARD 'B' (AT MCSP) AND WE STARTED TO TALK, AND HE BROUGHT-UP, THAT HE KNEW ABOUT "THE GOOD GUY CHRONO" (LETTER OF COMMENDATION) AND WE HAD PROBLEMS, BECAUSE, HE WANTED ME TO GET SOME COLOR PENCILS IN MY FIRST AND ONLY PACKAGE! THE PACKAGE CAME TO ME, BUT WITH WRITING PAPER AND NO COLOR PENCILS.

SO WE FELL-OUT, OVER THAT AND STOP SPEAKING TO EACH OTHER.

3. AROUND NOV/DEC '07, I WAS DUCETED TO SEE PSYCHE DR. OLSEN! WHEN I TOLD HIM ABOUT MY "GYM [E]XCLUSION CHRONO" THAT I HAD, FROM MCSP AND I ASKED IF HE WOULD CALL THERE AND TALK WITH "MR. OLS[O]N". HE SAID YES. LATER I WAS DUCETED TWO MORE TIMES TO SEE ANOTHER (PSYCHE) AND A WOMEN. I TOLD THEM THE SAME STORY ABOUT MY EXCLUSION CHRONO.

4. JAN. 26, 2008 10 AM I HEARD SAY [COP] TO ME, AND THEN, I WAS ATTACKED BY TWO INMATES. THE TWO OFFICERS (HARRIS AND ROCHA) ALLOWED THEM TO GET AWAY! AND NOT KNOW WHO THEY ARE/WERE? AFTER THE ATTACK ON ME, I WAS FINISHED!

5. I WAS TRANSFERED TO FRESNO HISPITAL, WITH A BROKEN WRIST!

6. I RETURNED, BACK TO PRISON, THAT SAME DAY, BOUT 8 PM TO O.H.U. PHARMACY WERE TWO OFFICERS, WERE WAITING ONE OF THEM WAS MS. LOPEZ SHE GAVE ME MY LOCK-UP PAPERS AND PROPERTY LIST PAPER. LATER THAT NIGHT I WAS REHOUSED IN AD SEG.

7. MARCH 6, 2008 I WENT TO COMMITTEE HEARING TO FA3, I TOLD COMMITTEE MEMBERS OF ENEMY CONCERNS. THEY BELIEVED I DIDN'T HAVE ANY! OVER ON 3 YARD.

8. MARCH 9, 2008 I LEFT AD-SEG AND WALKED TO FA3, WHERE I SAW TWO MORE ENEMYS.

9. I TOLD THE LT., HE TOLD STAFF TO TAKE ME TO CLINIC FOR 7219 REPORT, AND THAT WAS DONE SGT SIMON TOLD HIS STAFF ABOUT TO ORDER ME TO SIT ON THE BENCH OUTSIDE, FOR AWHILE. TWO HOURS LATER SGT SIMON ASKED ME TO GO TO THE GYM. I REFUSED ON ENEMY CONCERNS! SO HE! SAID TO ME, I DON'T CARE, IF YOU STAY, ALL NIGHT OUT HERE. SO AFTER THAT, I LEFT THE BENCH, AND STARTED TO WALK THE YARD, ALL THE TIME, BEING FOLLOWED BY STAFF. I THEN WALKED TO ANOTHER HOUSING UNIT, THEN SGT SIMON TOLD HIS STAFF MEMBERS TO PLACE HANDCUFFS ON ME, AND TAKE ME TO THE PROGRAM OFFICE. I WAS THEN PLACED IN THE MENTAL WARD TILL ABOUT MARCH 11/12/13, 2008, A SGT CAME TO INTERVIEW ME, ON MY, ENEMY CONCERN ON 3 YARD.

10. MARCH 14, 2008 ANOTHER SGT CAME TO VISIT ME, AND TOLD ME, THAT I WAS GOING BACK TO AD SEG NOT 3 YARD!. SO I LEFT THE MENTAL WARD, WITH SGT TO BE PLACED IN THE O.HU PHARMACY, HOLDING CELL.

McELROY DECL. #2, 2 of 3

11. THEN I MET C/O DEEGAN!

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT AVENAL AT KINGS COUNTY OF CALIFORNIA ON MAY 29 2008.

Marvin McElroy
MARVIN McELROY

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MARVIN McELROY
Plaintiff.

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
JAMES D. HARTLEY, WARDEN
AVENAL STATE PRISON, et al.,
Defendant(s)

DECLARATION IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER BY MARVIN McELROY

Civil Action No. ______________

DECLARATION UNDER PENALTY OF PERJURY BY MARVIN McELROY

I, MARVIN McELROY, BE COMPETENT TO MAKE THIS DECLARATION AND HAVING KNOWLEDGE OF THE MATTERS STATED HEREIN, DECLARES PURSUANT TO 28 USC §1746:

1. MAY 15, 2008 WHILE I WAS IN MY CELL, C/O FUGUNDES CAME TO THE DOOR AND HE ASKED ME IF, I WAS TO HAVE CANTEEN TODAY? I SAID NO. THEN I SAID I HAVE NO MONEY. THEN HE TOOK MY CELLY OUT OF OUR CELL, SO HE COULD PICKUP THE LEGAL DOCUMENTS OUT OF HIS TWO BOXES, OF HIS PROPERTY (SEE WALTON DECL. #1) C/O FUGUNDES BROUGHT INMATE C. WALTON BACK TO THE CELL, C/O HASKEL, WAS GIVING ME MY CANTEEN THROUGH THE FOOD HOLE IN THE DOOR. FUGUNDES SAID, TO ME. I THOUGHT, YOU SAID, YOU DIDNT HAVE ANY MONEY? I RESPONDED BY SAYING THAT, "I GET ALL MY MONEY, FROM [M]s. GREEN." THE C/O FUGUNDES LEFT MY DOOR.

2. THEN IN 3 MINUTE, C/O FUGUNDES WAS BACK AT MY CELL DOOR AND SAID TO ME THE CAPTAIN WANTED TO SEE ME, SO PUT HANDCUFFS ON ME AND BROUGHT ME TO THE LT. DUVALL OFFICE, WHERE I STOOD IN THE MIDDLE OF C/O FUGUNDES AND LT DUVALL AND [N]URSE GREEN.

3. THEN C/O FUGUNDESS STARTED ANSWERING (?"ASKING") ME QUESTIONS ABOUT, WHERE I GET MY MONEY FROM, AND DID I SAY THAT [N]URSE GREEN GAVE ME MONEY FOR MY CANTEEN? I RESPONDED TO C/O FUGUNDES QUESTIONS IN FRONT OF THE LT. DUVALL AND NURSE GREEN, BY SAYING TO THEM. [N]URSE GREEN HAVE NEVER GAVE ME ANY MONEY OR NEVER PUT MONEY ON MY BOOKS, AND I SAID THAT MY FAMILY GIVES ME MONEY, AND I SAID C/O FUGUNDESS IS TRYING TO SET-ME-UP!! BECAUSE MY CHARGES WAS DROPPED (see EXHIBIT "Piii") AND C/O, DEFENDANT, T. DEEGAN WAS HIS FRIEND. THEN C/O FUGUNDESS SAID WHAT IF I BRING YOUR CELLY WALTON IN HERE? I SAY, TO THAT QUESTION, YOU C/O FUGUNDESS JUST HAD MY CELLY IN THE SHOWER (RETURNING HIS PROPERTY). I DONT KNOW IF YOU THREATENED HIM OR NOT, SO BRING HIM AND WE'LL SEE. SO THE LT. ASK ME, IM I CALLING HIS OFFICER A LIE. I ANSWER BY SAYING THAT C/O FUGUNDES MADE A MISTAKE. SO LT TOLD THE C/O FUGUNDESS TO GET ME OUT OF HIS OFFICE.

4. SO THE C/O FUGUNDESS TOOK ME BACK TO MY CELL, AND ON THE WAY THE C/O FUGUNDES STARTED TO BEND MY RIGHT WRIST (THE ONE THAT WAS BROKE. see EXHIBIT 'N'), UNTIL IT STARTED TO HURT ME, AND ALSO BEND IT MORE, WHILE TAKING OFF THE HANDCUFFS, THAT I YELL OUT IN PAIN, TO HIM, YOU ARE HURTING MY WRIST. HE JUST SAID TO ME, "YOU JUST WET YOUR PANTS!" (see WALTON DECLARATION #1).

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT AVENAL AT KINGS COUNTY OF CALIFORNIA ON MAY 29, 2008.

Marvin McElroy
MARVIN McELROY

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MARVIN McELROY
Plaintiff

V

AVENAL STATE PRISON, et al.,
JAMES D. HARTLEY,
Defendant(s)

DECLARATION IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER BY JOHN W. UPSHAW, CDCR# V39102

Civil Action No. ______________

DECLARATION UNDER PENALTY OF PERJURY BY JOHN WILLIAM UPSHAW

I, JOHN UPSHAW, BEING COMPETENT TO MAKE THIS DECLARATION AND HAVING PERSONAL KNOWLEDGE OF THE MATTERS STATED HEREIN, DECLARES PURSUANT 28 USC §1746:

1. 3/14/08 I WAS AT BLD 390 IN HOLDING CELL #2. I HEARD INMATE McELROY IN CELL #1 CRYING OUT IN PAIN AND FEAR AND TELLING THE C/O'S HE COULD NOT RETURN TO 3 YARD. THE C/O'S KEPT SAYING THAT "YOU ARE GOING WHETHER YOU LIKE OR NOT", AND THEN I HEARD A CAN BEING SPRAYED (I THINK IT WAS MACE) AND McELROY CRYING IN PAIN.

2. AT WHICH POINT THAT C/O CAME OUT OF McELROY'S CELL #1 AND TOLD THE OFFICER MONITORING ME TO GET ME OUT OF THERE, AND RETURN ME TO AD-SEG.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT AVENAL AT KINGS COUNTY OF CALIFORNIA ON MAY 29, 2008.

[signature]
UPSHAW, CDC# V39102

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MARVIN McELROY,
Plaintiff,

v.

AVENAL STATE PRISON et al.,
JAMES D HARTLEY, WARDEN,
Defendent(s),

Civil Action No. ______

DECLARATION IN SUPPORT OF REQUEST FOR PRELIMINARY INJUNCTION BY CHARLES WALTON, CDC# F48589, PURSUANT 28 USC § 1746

DECLARATION UNDER PENALTY OF PERJURY OF CHARLES WALTON

I, CHARLES WALTON, BEING COMPETENT TO MAKE THIS DECLARATION AND HAVING PERSONAL KNOWLEDGE OF THE MATTERS STATED HEREIN DECLARES PURSUANT TO 28 USC §1746:

1. MAY 15, 2008 APROXIMATELY NOON AT ASP H.U. 140-1-14 AFTER C/O FAGUNDUS BROUGHT/PUT ME BACK IN MY CELL AFTER ISSUEING MY PROPERTY; THEN HE LEFT AFTER ASKING MARVIN ABOUT HIS SISTER.

2. A FEW MINUTES LATER HE RETURNED AND CUFFED MARVIN AND TOOK HIM TO THE SERGEANTS OFFICE BY THE SALLY-PORT.

3. ON THE WAY BACK I COULD SEE HIM PULLING MR McELROY'S RIST AS HE PLEADED HIM SAYING, "PLEASE MY ARM", HE SHOVED MR McELROY BACK IN THE CELL AND SAID, "YOU MESSED YOUR PANTS 'BOY'!"; THEN BENT HIS WRIST AGAIN WHILE UNCUFFING THROUGH TRAY SLOT WHILE AT ME.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, EXCUTED AT AVENAL AT KINGS COUNTY OF CALIFORNIA ON MAY 29, 2008.

______
CHARLES WALTON

35 WALTON DECL. #1, 1 of 1

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MARVIN MCELROY,
Plaintiff,
v.
AVENAL STATE PRISON, et al.,
JAMES D. HARTLEY, (A) WARDEN,
Defendant(s).

Civil Action No. ______

DECLARATION IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER BY CHARLES WALTON, F48589

DECLARATION UNDER PENALTY OF PERJURY BY CHARLES WALTON

I, CHARLES WALTON, BEING COMPETENT TO MAKE THIS DECLARATION AND HAVING PERSONAL KNOWLEDGE OF THE MATTERS STATED HEREIN, DECLARES PURSUANT TO 28 USC § 1746;

1. THAT ASP PERSONNEL AND OFFICIALS WORK IN CONCERT AT HINDERING INMATES, ACCESS TO THE COURT/ABILITY TO EFFECTIVELY AND ADEQUATELY LITIGATE ACTION IN COURT, ONCE INITIATED.

2. ASP STAFF/PERSONNEL DENY INMATES THEIR RIGHT TO CONFIDENTIAL CORRESPONDENCE UNDER 15 CCR § 3141. THEREBY MAKING IT NEARLY IMPOSSIBLE TO SERVE ANY NOTICE ON THE DEFENDANTS THAT THE COURTS MAY REQUIRE AS PART OF RULES OF PROCEDURE, THEREBY CAUSING AN INMATE CASE TO BE DISMISSED FOR FAILING TO SATISFY SOME TECHNICAL REQUIREMENT.

3. I HAVE PERSONALLY BEEN DENIED CONFIDENTIAL CORRESPONDENCE ON SEVERAL OCCASSIONS.

4. 1/17/08 ASP HU 350 C/O SADAC READ MY OUTGOING LEGAL MAIL VIOLATING

OP#009, AND HE ALSO GAVE LEGAL ADVISE, AS TO WHO I CAN WRITE AND HOW TO ADDRESS MY LEGAL MAIL.

5. 1/21/08 C/O SADAC READ LEGAL MAIL AGAIN THIS TIME C/O GOODSON WATCH HIM.

6. 1/22/08 C/O SANDAVOL WENT THROUGH MY LEGAL PROPERTY. THE INMATES ASSIGNED TO DORM 19'S BOOKS 32L, 32M AND 34L WITNESSED HER.

7. 1/29/08 C/O PERKINS ATTEMPTED TO DISCOURAGE ME FROM SENDING LEGAL MAIL, ASKING/MAILING "WHO ARE YOU WINNING TO", "YOU GOT A LOT OF LEGAL MAIL".

8 2/7/08 ASP HU 320 C/OS PATTY AND WOLF TRIED TO PREVENT ME FROM CORRESPONDING ~~WITH PRT~~ CONFIDENTIALLY WITH PRISON OFFICIALS

9. 3/6/08 GABRIELA RESINDEZ CAUSED CV-07-05580-SBA TO BE DISMISSED WITHHOLDING NEED CERTIFIED TRUST STATEMENT.

10. 4/29/08 ASP HU 140 C/O OLSEN HE WAS GIVEN "ORDERS" THAT INMATES ARE NOT ALLOWED CONFIDENTIAL CORRESPONDENCE WITH CAPTAIN ARUNE NOR ANY OTHER PRISON OFFICIALS.

11. 4/30/08 HU 140 C/O DOE REFUSED TO ALLOW CONFIDENTIAL CORRESPONDENCE WITH THE CAPTAIN.

12 5/14/08 HU. 140 C/O M. BASS WHILE COLLECTING LEGAL MAIL ASK WHY DO WE SEND SO MUCH LEGAL MAIL; AND THAT INMATES AREN'T ALLOWED TO CONFIDENTIALLY CORRESPOND WITH "CDC STAFF/OFFICERS".

13. 5/15/08 HU 140 M. BASS REFUSED TO ALLOW THE PLAINTIFF, MR MCELROY, TO CORRESPOND CONFIDENTIALLY WITH A CDC OFFICER.

I, DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT AVENAL AT KINGS COUNTY OF CALIFORNIA ON MAY 29, 2008.

CHARLES WALTON

Exhibit H

H i

804 SENT ON: BY: INMATE READS/SPEAKS ENGLISH: YES / NO

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

PAGE 1 OF 2

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| C-73869 | MCELROY | LIFE | ASP | 420-96L | F4-08-01-044 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3005(c) | MUTUAL COMBAT | H.U. 420 | 01/26/08 | 1010 HRS |

CIRCUMSTANCES

On Saturday, 01/26/08, at approximately 1010 hours, while observing the Housing Unit from the podium area in Building 420, my assigned unit, I heard noises consistent with that of inmates involved in mutual combat (the moving of beds and banging lockers). As I looked toward the area of bed 420-62L and bed 420-61L, I saw Inmate MCELROY, C-73689, 420-96L, involved in mutual combat with another inmate that I was not able to identify. ~~Both inmates were struggling with each other while on the floor, between bed 62L and 61L. During this struggle with each other, MCELROY was on top of the other inmate.~~ I notified Central Control via institutional radio of the incident and requested a Code 1 response for 420 toward the area near the 'B' side showers, assembly area near the staff podium. My partner, Officer R. Harris then activated his personal alarm. All inmates were ordered to get down on the ground to which they complied. MCELROY and the other inmate continued struggling with each other (holding on to each other) while still on the floor with MCELROY on top of the other inmate. As we proceeded to the area of the incident, I then saw MCELROY get up and started to run away toward the direction of his bed area, 420-96L.

**((CONTINUED ON RVR PART-C)**

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| D. ROCHA, Correctional Officer | | H.U. 420 FL | M/T |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| R.P. MURGALLIS, Sergeant | | DATE LOC. |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☐ SERIOUS | | | | ☐ HO ☐ SHO ☐ SC ☐ |

**COPIES GIVEN INMATE BEFORE HEARING**

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| ☐ CDC 115 | | 2/18/08 | 1130 | | | |
| ☒ INCIDENT REPORT LOG NUMBER. ASP-FA4-08-01-0023 | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |

HEARING

**SEE ATTACHED CDC 115 C FOR HEARING SUMMARY**

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| | | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| | | | |

| | BY (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | | |

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-73869 | MCELROY | F4-08-01-044 | ASP | 01/26/08 |

☐ SUPPLEMENTAL ☑ CONTINUATION OF: ☑ CDC 115 CIRCUMSTANCES ☐ HEARING ☐ I.E .REPORT ☐OTHER

As I responded to MCELROY's bed area, I saw MCELROY standing next to his bed. I then ordered MCELROY to turn and face the wall nearest to his bed area, to which he complied. MCELROY was placed in handcuffs and escorted out of the unit with no further incident. All other inmates were ordered to stand next to their beds and strip down to their boxers in order to check for bruises, cuts, red marks, those consistent with being involved in mutual combat with negative results. Subject is aware of this report. Subject is a participant in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management System (CCCMS) level of care. The Rules Violation Report does not indicate bizarre, unusual, or uncharacteristic behavior at the time of occurrence. Therefore a CDC-115 MH was not warranted. Subject has a T.A.B.E. reading score of ABOVE 4.0.

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED |
|---|---|---|
| D. ROCHA | Correctional Officer | |

| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| X | [signature] | [illegible] | [illegible] |

EXHIBIT 'I'

Letter of Commendation

STATE OF CALIFORNIA – YOUTH AND ADULT CORRECTIONAL AGENCY

PETE WILSON, *Governor*

DEPARTMENT OF CORRECTIONS

**MULE CREEK STATE PRISON**
Post Office Box 409099
Ione, California 95640
(209) 274-4911

CORRECTED COPY

September 2, 1993

Marvin McElroy
C73869 B6 111L

SUBJECT: **LETTER OF COMMENDATION**

This letter is to acknowledge your actions of July 6, 1993 at Deuel Vocational Institution which succeeded in curtailing an assault on staff.

Correctional Lieutenant Giottonini was struggling with an inmate when you intervened and pushed the inmate aside. You did this without regard for your own safety. Because of your involvement, the Lieutenant was spared further injury.

You are to be commended for this unselfish act You have proven yourself to be a conscientious individual whose actions serve as an example to others.

Sincerely,

(MS.) IVALEE HENRY
Warden

Exhibit I ii

I ii

MC ELROY is not a foreign born national.

VI. SUMMARY:

Inmate MC ELROY has been incarcerated within CDC since 1983. He was transferred to MCSP-IV in 1993. According to CDC 128G dated 07-29-93 Subject was being threatened by other black inmates for coming to the assistance of a Correctional Officer who was being assaulted. As a result he was initially transferred to MCSP-III Facility 'B.' Subject has not received a CSR Sensitive Needs endorsement simply because he has been continuously housed within a sensitive needs facility since 1993.

He now has been incarcerated for twenty consecutive years. MC ELROY has had only two (2) Rule Violation Reports (RVR) throughout his entire incarceration, 1986 and 2002. Subject has managed to remain disciplinary free since 2002 to date.

Upon review of Subject's Central Files, which include Confidential and Non-Confidential documents, it was noted that Subject has no prior prison terms and has served 45 days in Alameda Oakland County Jail. He said that he has a support system that will assist him with his transition back into society if paroled.

As far as his future behavior, if MC ELROY were given the opportunity to parole and re-enter society, there is no way to predict how he will behave. Subject's positive programming in while incarcerated is advantageous to him and continuance of such is highly recommended. However, consideration must be given to the Life crime, along with his choice of individuals he associated with ultimately resulted in him receiving a Life sentence. It is very difficult to determine if outside of a controlled environment and not having the goal of reentering society to work towards, how MC ELROY would act. Therefore, based on the above factors it is considered that Subject poses an unknown degree of threat/danger to the public if he were released.

Prior to release MC ELROY could benefit from:

- Continue to remain disciplinary free and positively program.
- Continue to participate in self-help and therapy programs.
- Participate in a vocational assignment.

Exhibit Oii

Oii

Some aspects of Risk Assessment may be influenced by how the Inmate is perceived as accepting responsibility for his crimes and the degree of involvement the Inmate had in the crimes.

MENTAL HEALTH CONCERNS OR PERSONALITY DISORDERS: The Inmate is aware that others see him as stressed, and stated he feels nervous, but can respond adequately. He denies having racing thoughts, but can become preoccupied in thoughts about his incarceration, and can evidence pressured speech regarding these issues. He remains in the MHSDS, at the CCCMS level of care, so he can be in groups. In the groups, he states, "We talk about family issues and how to cope." He reports that he initially was provided psychological assistance as a result of his helping save an officer (1993). "At that time I was in shock that the Inmates turned against me for just helping an officer." He got psychological help, and also was sent to an SNY yard. He speaks about that time with intensity, with increased body movements and affect.

After coming to Mule Creek, and on an SNY yard, the Inmate was again attacked by his cellie in 2002 after his cellie learned he had help save an Officer. As a result, the Inmate got a broken leg, and was transferred to another SNY yard (a level 4 Yard). The Inmate had 2 surgeries and has some limitation in his range of motion from the attack and, as a result, can no longer jog (one of his best previous ways of releasing stress). Then, in 2005, the Inmate went to mental health services and said that his cellie was having mental health problems. It later turned out that the cellie was not taking his prescribed psychiatric medications. At some time, after Inmate McElroy had expressed his concerns to mental health staff about his cellie's increasing psychological problems, the cellie stated that Inmate McElroy had sexually assaulted him. The Inmate was ultimately cleared of these charges, but spent 7 months in Ad Seg waiting for the case to be evaluated. The time in Ad Seg also increased his stress levels. The Inmate's older brother passed away in November of 2006, which was an additional stressor. He states that, while he no longer needs formal mental health counseling services, continuing to go to groups remains helpful in his daily coping.

The Inmate denies having psychological problems prior to his incarceration. It is clear that, from the onset of his incarceration, he has had a variety of documented stress-related symptoms, such as itching, sweating and headaches. At one time, he was diagnosed as having psychological factors affecting medical conditions. He also, at times, has been seen as improved with few, if any, symptoms. Most evaluators for the Board, including this evaluator, note elevated tension and stress related to incarceration and to the Inmate's stated belief that he was wrongfully convicted. This has been his consistent pattern of psychological responding. Treatment for elevated stress responding has been provided at tines in MHSDS for the Inmate since 1998. In materials reviewed by this examiner, the Inmate received diagnoses, from the Mental Health Staff, of Major Depression in 1998, Delusional Disorder and Generalized Anxiety Disorder in 2000, Anxiety Disorder NOS and Depression NOS and Antisocial Personality Disorder in 2002, and Depression NOS in Remission in 2007. According to the Inmate, he has been kept in CCCMS so he can continue to participate in groups, which are helpful for him.

Exhibit Pi

ASP-17-08-01308

Pi

(AD-SEG)

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region 1. 140/114 2. ______

Log No. 1. 08-1308 2. ______

Category (1)

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Marvin McElroy | C-73869 | NONE | 140/114 |

A. Describe Problem: I Am Filing This CDC 602, on The Facts, That on 3-9-08. I refused To, Obey orders From Staff, on The grounds, That, I Believe That my life and safety, would be Placed, in Endanger, by moving me To Facility 3, when my "Two" Attacker Escape From The incident, on Facility 4, without! being A Identified, by Staff and Could have, been moved? or have Friends, on Facility 3, And since, I was Seriously injuried, in The violent Attack, I Feel! The Threat of Violence, is Still Real to me. And be sides That, I saw Two, more enemies, on Facility 3, That same day,

If you need more space, attach one additional sheet.

B. Action Requested: For This Reason, My Safety and security of This, Institution should be, put First! And This CDC 128-A Should be Dismissed! For better Training, with special Inmate.

Inmate/Parolee Signature: Marvin McElroy Date Submitted: 4-26-08

C. INFORMAL LEVEL (Date Received: ______)

Staff Response: ______

BYPASS

Staff Signature: ______ Date Returned to Inmate: ______

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: ______ Date Submitted: ______

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: 08 1308

RECEIVED
APR 29 2008
ASP APPEALS OFFICE

State of California Department of Corrections and Rehabilitation

# Memorandum

**DATE:** May 20, 2008

**TO:** Inmate Mc Elroy, CDC #C-73869
Housing Unit 140 /114L
Avenal State Prison

**SUBJECT:** First Level Response

**APPEAL LOG NUMBER:** ASP-M-08-01308

**INTERVIEWED BY: J. PHELAN, Correctional Sergeant**

**APPEAL DECISION: DENIED**

**APPEAL ISSUE:** In your appeal you stated that you thought your life and safety would be in jeopardy by moving to Facility III. You also stated that because your attackers' on Facility IV were never identified, they could have been moved to Facility III. You are requesting the following on appeal: (1) receive copies of any pertinent documents issued when you were housed in the Out Patient Housing Unit (OHU) and (2) have the 128A 'Counseling Chrono' dismissed.

**APPEAL RESPONSE:** Your appeal has received careful consideration and has been thoroughly researched. Your appeal was referred for First Level Review on 05-13-08. On 05-14-08, you were interviewed by Sgt. J. Phelan, in order to provide you an opportunity to fully explain your appeal and to provide any supporting evidence or documents.

During your 05-14-08 interview, you stated you were unable to identify the inmates who assaulted you while on Facility IV. If you had been able to identify these inmates at the time of this alleged incident appropriate steps would be in place so as to not jeopardize your safety.* I personally reviewed your Central File, and you do not have any documented or confidential enemy concerns noted at ASP. The issue of you not receiving a 1030 confidential form is moot as there was no confidential information given as to why you went to the OHU. As for not receiving a 7219 medical evaluation, staff is not required to perform a medical evaluation when you receive a Rules Violation Report, unless there are injuries to report. You stated in your appeal that you are not guilty for any actions that occurred on 03-09-08. In fact you are guilty as charged, the specific act: Refusing a Direct Order, as per CCR Title 15. Section 3005 Conduct (b); states, "Inmates and parolees must promptly and courteously obey written and verbal orders and instructions from departmental staff and from employees of other agencies with authorized responsibility for the custody and supervision of inmates and parolees." Based upon the Title 15 and your own admission (see Defendants Statement as per his RVR 115 hearing dated 4/18/08) your exact words were, "I refused to go into the Facility III gym." Also, it is noted in your CDC 602 , Inmate Appeal, the second sentence states, "I refused to obey orders from staff." Your self-

admission of the specific act of refusing a Direct Order is why the Senior Hearing Officer (SHO) found you guilty. However, the SHO reduced your RVR 115 from a Serious to an Administrative Offense. This Administrative Offense was further reduced and documented on a CDC-CDC-128A for, Counseling Chrono, dated 04-18-08.

Considering the above information, your appeal is denied at the First Level of Review.

J. PHELAN
Correctional Sergeant
Facility III
Avenal State Prison

L. OCHOA
Associate Warden
Complex B
Avenal State Prison

(2)

AT FIRST! ARRIVING here, AT AVENAL STATE PRISON. "All" The INMATES, ARE TAKEN TO A ClASSROOM, where "All" OF US, ARE GIVEN, The RULES, ON? WHAT To do AND what NOT? To do here, By STAFF Members. And Told us! IF WE have "ANY," Problems? ON FACILITY 4, WE would be moved, To FACILITY 3, AND The WORD, OF "ANY" Thing, ThAT you did? would be PAST along, To others ON FACILITY 3, ON you! And being over There, Would NOT! SAVE you! And ON This CASE, Log No. F3-08-03-001 I AsKed The (IE) FOR A copy OF The CDC 1030 REPORT, And "ANY"? Other copies like The CDC 7219 REPORT, ON me? AS well AS, Other missing DOCUMENTS, NOT! given To me? The (IE) OFFICER A. ANDERSON, Told me? because! I WAS Placed in The O.H.U. Building, ON MARCH 9, 08. Through MARCH 14, 08. And "NOT"! Housed! IN (AD-SEG) There ARE NO! other DOCUMENTS, FOR me? And Now! I am A E.O.P. INMATE, AFTER This, whole ORdeAL, has happen To me, Im NOT! Guilty! FOR ANY ACTIONS ThAT happen, ThAT Day 3-9-08. And Now!

804 SENT ON: BY: INMATE READS/SPEAKS ENGLISH: YES / NO

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

# RULES VIOLATION REPORT

Typist: RT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| C-73869 | MCELROY | LIFER | ASP | GF3-24M | F3-08-03-001 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005(b) CONDUCT | REFUSING A DIRECT ORDER | FACILITY III | 03/09/08 | 1515 HRS |

CIRCUMSTANCES

On 03/09/08, at approximately 1515 hours, while performing my duties as Facility III Program Sergeant, I received information that Inmate MCELROY, C-73869, GF3-24M, was to be released from Administrative Segregation (Ad-Seg) To Facility III. I was told that Inmate McElroy did not want to be housed on Facility III. Facility III S&E arrived to the yard with Inmate McElroy. Inmate McElroy sat down on the ground in front of the Medical Clinic and stated, "I'm not going to the Gym. I refuse." I asked Inmate McElroy, why he was refusing his housing. Inmate McElroy stated "I refuse." I again asked McElroy what was the problem with the gym. Inmate McElroy stated "I refuse." I continued to ask Inmate McElroy questions to resolve his concerns but all I got was "I refuse." I notified the Facility Lieutenant. The Lieutenant told me to let him sit on the bleachers on the yard and think about it. I gave Inmate McElroy a direct order to sit on the bleachers until further notice. I advised yard staff to watch Inmate McElroy. Inmate McElroy got up off the bleachers then began to wander the yard. Inmate McElroy was told

**(Continued on page 2)**

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| G. SIMON Correctional Sergeant | | FACILITY III SEGEANT 3/W | T/W |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| J.BOSTON, Correctional Lieutenant | | DATE LOC. |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☐ SERIOUS | | | | ☐ HO ☐ SHO ☐ SC ☐ |

**COPIES GIVEN INMATE BEFORE HEARING**

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| ☐ CDC 115 | | | | | | |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |

HEARING

**SEE ATTACHED CDC 115 C FOR HEARING SUMMARY**

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| | | | | |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE | |
| D. ARLINE, FACILITY CAPTAIN | | L. OCHOA, ASSOCIATE WARDEN | | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | BY (STAFF'S SIGNATURE) | DATE | TIME |

CDC 115 (7/88)

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C — PAGE 2 OF 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-73869 | MCELROY | 08-03-001 | ASP | 03/09/08 |

☐ SUPPLEMENTAL ☑ CONTINUATION OF: ☑ CDC 115 CIRCUMSTANCES ☐ HEARING ☐ I.E .REPORT

Numerous times to go sit on the bleachers. When the yard opened at 1900 hours, McElroy then began to walk quickly towards Housing Unit 350. I advised Housing Unit 350 Staff on the radio that Inmate McElroy was en-rout. They met Inmate McElroy at their front door and ordered him to face the wall. I arrived with yard staff and escorted Inmate McElroy to the clinic to be medically evaluated. Inmate McElroy would not talk to medical staff and just stated "I refuse." A psychological evaluation was performed and recorded by medical staff. Inmate McElroy was then escorted to the OHU for further testing. Inmate McElroy is in violation of CCR § 3005 (b) Obeying Orders for not re-housing on Facility III like he was ordered to. Inmate McElroy has no documented or confidential enemy concerns and has no reason to refuse a bed move to Facility III. Inmate McElroy's behavior disrupted the normal yard release and drew the attention of the inmates on the yard. Inmate McElroy was told he would receive a CDC 115 and Inmate McElroy stated "I don't give a fuck." Inmate MCELROY is aware of this report

Subject is a participant in the Department's Mental Health Services Delivery System (MHSDS) at the CCCMS level of care. The observed behavior **was not** considered to be either bizarre, unusual, or an uncharacteristic manner. Therefore, a CDC-115 Mental Health Assessment was not warranted. Subject has a TABE reading score of **NTR**.

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED |
|---|---|---|
| | | |

| ☐ COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| | | | |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| C-73869 | MCELROY | 3005(b) CONDUCT | 03/09/08 | ASP | F3-08-03-001 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☐ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I DO NOT REQUEST** my hearing to be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |

DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ | |

## STAFF ASSISTANT

STAFF ASSISTANT ☐ REQUESTED ☐ WAIVED BY INMATE | INMATE SIGNATURE ▶ | DATE

☐ ASSIGNED | DATE | NAME OF STAFF

☐ NOT ASSIGNED | REASON DOES / DOES NOT MEET CRITERIA PER CCR 3315(d)(2)(A)

## INVESTIGATIVE EMPLOYEE

INVESTIGATIVE EMPLOYEE ☐ REQUESTED ☐ WAIVED BY INMATE | INMATE SIGNATURE ▶ | DATE

☐ ASSIGNED | DATE | NAME OF STAFF

☐ NOT ASSIGNED | REASON DOES / DOES NOT MEET CRITERIA PER CCR 3315(d)(1)(A)

EVIDENCE/INFORMATION REQUESTED BY INMATE

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE ☐ STAFF ASSISTANT ☐ INVESTIGATIVE EMPLOYEE ☐ OTHER ______ ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have signification information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

INVESTIGATOR'S SIGNATURE ▶ | DATE

☐ COPY OF 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE

CDC 115-A (7/88)

*— If additional space is required use supplemental pages —*

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE 1 of 1

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-73869 | MCELROY | F3-08-03-001 | ASP | 04/18/08 |

☐SUPPLEMENTAL ☐CONTINUATION OF: ☐CDC 115 CIRCUMSTANCES ☐HEARING ☐I.E .REPORT ☑OTHER: STAFF ASSISTANT

**[ STAFF ASSISTANT FOR MENTAL HEALTH INMATE ]**

On 04/18/08, I, Correctional Officer T. MILLS, was assigned by my supervisor to be Staff Assistant pertaining to this CDC-115 submitted by G. SIMON Correctional Sergeant on Inmate MCELROY, C-73869, GF3-24M, for Rules Violation Report Log #F3-08-03-001, charging him of violating 3005(b) CONDUCT. Inmate MCELROY meets the criteria for a Staff Assistant as described in CCR §3315(d)(2)(A)1.2.3., due of his mental health status, which requires a Staff Assistant for his preparation of the Disciplinary Hearing, a requirement which I am providing for him. I contacted Inmate MCELROY and informed him of my assignment as his Staff Assistant. I asked him if he had any objections to my being his Staff Assistant, to which he stated that he had none. I explained the procedures that would be followed at the Disciplinary Hearing to ensure that his position is understood. I informed him of his rights to confidentiality pursuant to CCR §3318(b)(2), and if he requested, all information revealed to me would not be divulged to anyone. I explained to him his rights concerning this hearing and that I would be present at the hearing to aid him in understanding the decision reached by the Senior Hearing Officer. Inmate MCELROY stated that he understood everything that I informed him of and that he was ready to proceed with the disciplinary process.

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED |
|---|---|---|
| T. MILLS | Correctional Officer | 04/18/08 |

| ☐ COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| | | | |

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE 1 of 1

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-73869 | MCELROY | F3-08-03-001 | ASP | |

☐SUPPLEMENTAL ☐CONTINUATION OF: ☐CDC 115 CIRCUMSTANCES ☐HEARING ☐I.E .REPORT

**[ I.E. REPORT ]**

On 03/31/08, I, Correctional Officer A. ANDERSON, was assigned as the Investigative Employee (I.E.) for Rules Violation Report (CDC-115) Log Number F3-08-03-001. I asked Inmate **MCELROY, C-73869,** if he had any objections to my being his I.E.; he stated that he had none.

**DEFENDANT'S STATEMENT:** I refused to go into the Facility III Gym because I feel that I have enemies on Yard III. On Jan. 26,2008; I was jumped in Housing Unit 420 by two Mexican Inmates. I could not identify them, and they were not caught by Staff. There is no way that I know if they are on Yard III. I think they are there. While I was sitting on the bleachers on Yard III, I recognized Two (2) Inmates that were at Mule Creek with me. At Mule Creek I saved a Correctional Lieutenant from being beat up by another Inmate. One of the Inmates I recognized is named Joe, I don't know his last name, but he lives in 320. The other Inmate that I recognized is named Mario, I don't know his last name either, but he lives in 310. I also told the Ad./Seg. Staff on 03/09/08 that I could not go to three yard, and they told me to go anyway. I told them that I could not protect myself because my right hand had pins in it. That's why I didn't want to go to Yard III.

**REPORTING EMPLOYEE'S STATEMENT:** On 03/09/08, at approximately 1515 hours, while performing my duties as Facility III Program Sergeant, I received information that Inmate MCELROY, C-73869, GF3-24M, was to be released from Administrative Segregation (Ad-Seg) To Facility III. I was told that Inmate McElroy did not want to be housed on Facility III. Facility III S&E arrived to the yard with Inmate McElroy. Inmate McElroy sat down on the ground in front of the Medical Clinic and stated, "I'm not going to the Gym. I refuse." I asked Inmate McElroy, why he was refusing his housing. Inmate McElroy stated "I refuse." I again asked McElroy what was the problem with the gym. Inmate McElroy stated "I refuse." I continued to ask Inmate McElroy questions to resolve his concerns but all I got was "I refuse." I notified the Facility Lieutenant. The Lieutenant told me to let him sit on the bleachers on the yard and think about it. I gave Inmate McElroy a direct order to sit on the bleachers until further notice. I advised yard staff to watch Inmate McElroy. Inmate McElroy got up off the bleachers then began to wander the yard. Inmate McElroy was told Numerous times to go sit on the bleachers. When the yard opened at 1900 hours, McElroy then began to walk quickly towards Housing Unit 350. I advised Housing Unit 350 Staff on the radio that Inmate McElroy was en-rout. They met Inmate McElroy at their front door and ordered him to face the wall. I arrived with yard staff and escorted Inmate McElroy to the clinic to be medically evaluated. Inmate McElroy would not talk to medical staff and just stated "I refuse." A psychological evaluation was performed and recorded by medical staff. Inmate McElroy was then escorted to the OHU for further testing. Inmate McElroy is in violation of CCR § 3005 (b) Obeying Orders for not re-housing on Facility III like he was ordered to. Inmate McElroy has no documented or confidential enemy concerns and has no reason to refuse a bed move to Facility III. Inmate McElroy's behavior disrupted the normal yard release and drew the attention of the inmates on the yard. Inmate McElroy was told he would receive a CDC 115 and Inmate McElroy stated "I don't give a fuck."

**REPORTING EMPLOYEE REQUESTED AT HEARING: YES**

**INVESTIGATIVE EMPLOYEE REQUESTED AT HEARING: NO**

**ADDITIONAL INFORMATION: NONE**

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED |
|---|---|---|
| A. ANDERSON | Correctional Officer | |

| ☐ COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| | | | |

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE 1 of 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | Typist:: DREG<br>TODAY'S DATE |
|---|---|---|---|---|
| C-73869 | MCELROY | F3-08-03-001 | ASP | 04/18/08 |

☐SUPPLEMENTAL ☐CONTINUATION OF: ☐CDC 115 CIRCUMSTANCES ☑HEARING ☐I.E .REPORT ☐OTHER

**PLEA: GUILTY**

**SPEAKS/READS ENGLISH: YES**
**TABE READING SCORE: NTR**
**LEARNING DISABLED: NO**

**FINDINGS: GUILTY/REDUCED TO 128A**

**ADJUDICATION**: The hearing was convened on 04/18/08, at 1930 hours, when I introduced myself to Inmate MCELROY, C-73869, as the Senior Hearing Officer for this disciplinary hearing. Subject **is** a participant in the Department's Mental Health Services Delivery System (MHSDS) at the Enhanced Out Patient (EOP) level of care. Information received by staff indicates he is capable of understanding these proceedings. Subject stated that he was in **good** health and that he had no objections to this hearing being conducted by this Senior Hearing Officer. Subject acknowledged that he had received copies of all pertinent documentation. Subject **waived** the full twenty-four (24) hour preparation period to this hearing and is ready to proceed (see attached CDC 128-B). These reports as well as the disciplinary charge of '**REFUSING A DIRECT ORDER**' were read to the Subject in the hearing. Subject stated that he understood both and that he was prepared to proceed.

**DUE PROCESS:** This disciplinary report dated 03/09/08 **was** served on the Subject on 03/18/08, which **was** within 15 days from the date of discovery. This disciplinary hearing **was not** held within 30 days of service. Time constraints **have not** been met. Therefore, there **are** due process issues.

**STAFF ASSISTANT:** Subject **is** a participant in the Department's Mental Health Services Delivery System (MHSDS) at the Enhance Out Patient (EOP) level of care effective March 20, 2008. The observed behavior, which led to the issuance of this Rules Violation Report, **was not** considered to be either bizarre, unusual or an uncharacteristic manner. Subject has a TABE reading score of **NTR,** therefore, as part of the disciplinary process and to ensure compliance with Subject's procedural due process rights, Correctional Officer T. Mills **was** assigned as the Staff Assistant. The Staff Assistant was present and explained the hearing procedures and the Subject's rights during the hearing. The following method was utilized to determine Subject's ability to effectively communicate and understand these proceedings: Simple English.

**DISTRICT ATTORNEY**: This case **was not** referred for criminal prosecution.

**REPORTING EMPLOYEE:** Subject **did not** request the presence of the Reporting Employee at the hearing.

**INVESTIGATIVE EMPLOYEE:** Correctional Officer A. Anderson **was** assigned as the Investigative Employee pursuant to CCR §3315(d)(1)(A). Subject acknowledged receiving his copy of the Investigative Employee's report at least 24 hours prior to this hearing.

**INMATE PLED: Declined to** plea, and a plea of **Not Guilty** was entered on the Subject's behalf by this Senior Hearing Officer.

**REQUEST FOR WITNESSES:** Subject **did not** request any witnesses to be present at his disciplinary hearing.

**EVIDENCE PRESENTED AT THE HEARING:**
1. Rules Violation Report (CDC-115) dated 03/09/08.
2. Investigative Employee's Report, dated 04/01/08.

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED |
|---|---|---|
| J. SALCEDO | Correctional Lieutenant | 04/18/08 |

| ☐ COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| | | | |

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C PAGE 2 of 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-73869 | MCELROY | F3-08-03-001 | ASP | 04/18/08 |

☐SUPPLEMENTAL ☑CONTINUATION OF: ☐CDC 115 CIRCUMSTANCES ☑HEARING ☐I.E .REPORT ☐OTHER

**FINDINGS**: Inmate McElroy is found GUILTY of violating **CCR § 3005(b) CONDUCT**, specifically, **REFUSING A DIRECT ORDER**.

This finding is based on the following:

A. Based upon the Reporting Employee's written account of the alleged misconduct as documented in the circumstances portion of the CDC-115 which states in part… "On 03/09/08, at approximately 1515 hours, while performing my duties as Facility III Program Sergeant, I received information that Inmate MCELROY, C-73869, GF3-24M, was to be released from Administrative Segregation (Ad-Seg) To Facility III. I was told that Inmate McElroy did not want to be housed on Facility III. Facility III S&E arrived to the yard with Inmate McElroy. Inmate McElroy sat down on the ground in front of the Medical Clinic and stated, "I'm not going to the Gym. I refuse."

B. Based on the Investigative Employee Report, dated 04/01/08, authored by Correctional Officer A. Anderson, which states in part; '**Defendant's Statement**', in part… "I refused to go into the Facility III Gym."

The aforementioned items constitute a preponderance of evidence and thereby support a finding of **GUILTY.**

**Guilty as charged.** However, as a finding of the hearing, the CDC-115 was reclassified from a Serious to an Administrative Classification level pursuant to CCR §3313(c)(2). This Rule Violation Report was further reduced from an Administrative Offense and will be documented on a CDC-128A Counseling Chrono. This decision is made in the interest of justice and in accord with progressive discipline.

**ADDITIONAL COMMENTS:** this Senior Hearing Officer further notes that time constrains in this RVR have not been met and there **are** due process issues.

**LOSS OF CREDIT:** There is no credit forfeiture as a result of this RVR.

**LOSS OF PRIVILEGES:** Per DOM Section 54020, Visiting, Friday visitation is designated for inmates who have been disciplinary free for a period of ninety (90) days. Inmate MCELROY has lost Friday visitation privileges from 04/18/08 through 07/19/08..

**ADDITIONAL DISCIPLINARY ACTIONS:** Subject **was** Counseled and Reprimanded.

**COMMITTEE REFERRAL:** Subject **was** referred to the Unit Classification Committee (UCC) for Program and/or Housing Review.

Subject **was** advised that he would receive a completed copy of the Rules Violation Report after final review by the Chief Disciplinary Officer. Subject was advised of his right to appeal per CCR §3084.5(b)(4).

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED |
|---|---|---|
| J. SALCEDO | Correctional Lieutenant | 04/18/08 |

| ☐ COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128 A (8-87)

NAME AND NUMBER **MCELROY** **C-73869** **140-1-14L**

Per disposition of CDC-115, Rule Violation Report, Log No. F3-08-03-001, in where, Inmate **MCELROY, C-73869, 140-1-14L**, this Rule Violation Report was reclassified from a Serious to an Administrative Offense and further reduced to a CDC-128A Counseling Chrono. The following circumstances are documented:

On 03/09/08, at approximately 1515 hours, while performing my duties as Facility III Program Sergeant, I received information that Inmate MCELROY, C-73869, GF3-24M, was to be released from Administrative Segregation (Ad-Seg) To Facility III. I was told that Inmate McElroy did not want to be housed on Facility III. Facility III S&E arrived to the yard with Inmate McElroy. Inmate McElroy sat down on the ground in front of the Medical Clinic and stated, "I'm not going to the Gym. I refuse." I asked Inmate McElroy, why he was refusing his housing. Inmate McElroy stated "I refuse." I again asked McElroy what was the problem with the gym. Inmate McElroy stated "I refuse." I continued to ask Inmate McElroy questions to resolve his concerns but all I got was "I refuse." I notified the Facility Lieutenant. The Lieutenant told me to let him sit on the bleachers on the yard and think about it. I gave Inmate McElroy a direct order to sit on the bleachers until further notice. I advised yard staff to watch Inmate McElroy. Inmate McElroy got up off the bleachers then began to wander the yard. Inmate McElroy was told Numerous times to go sit on the bleachers. When the yard opened at 1900 hours, McElroy then began to walk quickly towards Housing Unit 350. I advised Housing Unit 350 Staff on the radio that Inmate McElroy was en-rout. They met Inmate McElroy at their front door and ordered him to face the wall. I arrived with yard staff and escorted Inmate McElroy to the clinic to be medically evaluated. Inmate McElroy would not talk to medical staff and just stated, "I refuse." A psychological evaluation was performed and recorded by medical staff. Inmate McElroy was then escorted to the OHU for further testing. Inmate McElroy is in violation of CCR § 3005 (b) Obeying Orders for not re-housing on Facility III like he was ordered to. Inmate McElroy has no documented or confidential enemy concerns and has no reason to refuse a bed move to Facility III. Inmate McElroy's behavior disrupted the normal yard release and drew the attention of the inmates on the yard. Inmate McElroy was told he would receive a CDC 115 and Inmate McElroy stated "I don't give a fuck."

Inmate MCELROY is aware of this documentation.

Original: C-File
Copy: Inmate
Program Office

J. SALCEDO
Senior Hearing Officer
Facility III, 3 /W, A.S.P.

**DATE: 04/18/08** **CCR. §3005(b), 'DISOBEYING A DIRECT ORDER'** **CUSTODIAL COUNSELING**

## REVIEWING CUSTODY SUPERVISOR

A Rules Violation Report (RVR), CDC 115, has been written on the following inmate, who requires a mental heath assessment.

Inmate Name: MCELROY CDC Number: C-73869

RVR Log Number: F3-08-03-001 Date of Violation: 03/09/08 Housing: 140-1-14L

Specific Act Charged: REFUSING A DIRECT ORDER

The inmate's current Mental Heath Level of Care is: (check one)

[ ] NOT IN MHSDS PROGRAM* ☐ CCCMS* ☒ EOP ☐ MHCB ☐ DMH

**CCCMS AND NON-MHSDS PROGRAM PARTICIPANTS WILL BE REFERRED FOR A MENTAL HEALTH ASSESSMENT FOR "BIZARRE, UNUSUAL OR UNCHARACTERISTIC" BEHAVIOR.**

Sent to Mental Health: 04/08/07 By: ______________ / ______________
Print Name Signature

Return this form to: FACILITY III By: 04/19/08 (CCCMS/Non-MHSDS, 5 working days; EOP/MHCB/DMH, 15 Calendar days)

## MENTAL HEATH CLINICIAN

Use "lay terms" for responses

Conducted **non-confidential** interview: ______________ (inmate informed of non-confidentiality).

1. CCCMS/NON-MHSDS only. Are there any mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his/her interests in the hearing that would indicate the need for the assignment of a Staff Assistant?
☐ Yes ☐ No Explain "yes" response: ______________

2. In your opinion, did the inmate's mental disorder appear to contribute to the behavior that led to the RVR?
☐ Yes ☐ No Explain "yes" response: ______________

3. If the inmate is found guilty of offense, are there any mental health factors that the hearing office should consider in assessing the penalty? ☐ Yes ☐ No Explain "yes" response: ______________

| Institution: | Clinician: | Signature: | Date: |
|---|---|---|---|
| Received by (custody staff) | Name: | Signature: | Date: |

**Distribution**: Original: Central File with adjudicated CDC 115; First copy: Unit Health Record: Second copy: Inmate

| RULES VIOLATION REPORT<br>MENTAL HEATH ASSESSMENT<br>CDC 115X (11/02)<br><br>STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS | **Inmate Name: MCELROY**<br>(Last, First, MI)<br><br>**CDC Number: C-73869**<br><br>**DOB:** |
|---|---|